UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACOB R. GLICKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 C 4907 |
| | ) | |
| MAIN-NILES ASSOCIATION OF SPECIAL RECREATION; BLAIRE E. PRITCHARD, in her official and individual capacities; and LAUREN C. RUIZ, in her official and individual capacities, | ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In July 2017, Defendants Lauren Ruiz and Blaire Pritchard, two employees of Defendant Maine-Niles Association of Special Recreation, accused Plaintiff Jacob Glickman of acting suspiciously in a public park. Glickman was arrested for disorderly conduct. The disorderly conduct charge was later dismissed, but Plaintiff was temporarily banned from the park and lost employment opportunities as a result of the arrest. He has asserted fifteen different claims, under both state and federal law, against the three Defendants. Defendants have filed a motion to dismiss [40] all claims. For the foregoing reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiff's allegations, assumed true for purposes of this analysis, establish the following: In June 2017, Plaintiff Jacob Glickman purchased a puppy, Ernie, and began taking Ernie to the "dog-friendly" park in Morton Grove, Illinois, where Glickman then lived. (Second Am. Compl. [38] ¶ 2–3.) By mid-July, another group joined Plaintiff and Ernie as Austin Park regulars: a number of eight- to eighteen-year-old children with special needs, including cognitive and physical disabilities, who were attending a day camp operated by Defendant Maine-Niles Association of Special Recreation ("MNASR"). (*Id.* ¶¶ 4, 21–22; Trial Tr., *People v. Glickman*, No. 17 MC2 1538

(Cir. Ct. of Cook Cty. Mar. 19, 2018), Ex. D to Second Am. Compl. [38], at 9:21–10:1.) Glickman and Ernie began to interact with the MNASR campers on a daily basis. (*Id.* ¶ 22.) The interactions were not welcome to the day camp officials, however; on July 19, Defendant Blaire Pritchard, site manager for MNASR, asked Plaintiff to keep his puppy away from the campers. (*Id.* ¶ 6, 23.) When Plaintiff nonetheless returned to the park the next day, Pritchard called Defendant Lauren Ruiz, a MNASR program manager, to inform her of Plaintiff's presence. (*Id.* ¶ 24.) Ruiz called 911, allegedly "with the intent of having Plaintiff removed from Austin Park." (*Id.* ¶ 25.)

Morton Grove Police Department ("MGPD") officers Timothy Walsh and Mark Atto arrived at the park and met with Pritchard and Ruiz.[1] (*Id.* ¶ 26.) Pritchard reported that Plaintiff had been acting suspiciously for the previous week and a half. (*Id.* ¶ 26(a).) According to Officer Walsh's case narrative, which Plaintiff included with his complaint,[2] he observed that Plaintiff was standing with two juvenile females and that his dog was not on a leash. (Officer Walsh's Case Narrative, Ex. A to Second Am. Compl. [38], at 4.) As Officer Walsh approached, the two girls—who have not been identified and were not campers (Second Am. Compl. [38] ¶ 26(h))—left the scene. (Walsh's Case Narrative at 4.) The officer questioned Plaintiff, who insisted he had done nothing wrong. (*Id.*) Plaintiff received a citation for not having Ernie on a leash and left Austin Park on foot. (*Id.*) Pritchard then informed Officer Walsh that she had seen Plaintiff taking photographs

---

[1] Plaintiff filed a separate lawsuit in this court against MGPD and the officers. *See Glickman v. Vill. of Morton Grove et. al.*, No. 18 C 04931 [1]. In addition, although Plaintiff refers to "Officer Otto" throughout his complaint, it appears that this was a misspelling, and the court will use the corrected spelling throughout. *See Glickman v. Village of Morton Grove*, No. 18 C 04931, 2019 WL 1754091 (N.D. Ill. Apr. 19, 2019) (Shah, J.).

[2] This report was attached as Exhibit A to Plaintiff's Second Amended Complaint. Such documents attached to and referenced in the complaint may be treated as part of the complaint when the court decides a Rule 12(b)(6) motion. *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Williams v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (noting that when considering a motion to dismiss, "the court may consider . . . documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice").

"in the direction of the two female juveniles." (*Id.*) Following this conversation, Officer Walsh left the park, caught up with Plaintiff, and asked to see his phone—but Plaintiff refused. (*Id.*)

At that point, Walsh returned to the park to speak with Pritchard and Ruiz, who provided both officers with what Plaintiff calls "false and defamatory statements" about him. (Second Am. Compl. [38] ¶ 26.) First, Pritchard told Officer Walsh that Plaintiff had been acting suspiciously for the past week and a half and that she first interacted with Plaintiff on July 11. (*Id.* ¶ 26(a)-(b).) Plaintiff alleges that this was false, noting that in a MNASR documentation form she completed (which Plaintiff included with his complaint), Pritchard says her first interaction with Plaintiff was on July 13 and that Plaintiff simply introduced himself and his dog at that time. (*Id.*) Second, Pritchard told Officer Walsh that she had to intervene on July 13 when Plaintiff let his dog run towards campers and he also spoke to and let play with his dog a camper who had been separated from the camp. (*Id.* ¶ 26(c).) This is false, according to Plaintiff, because Pritchard's documentation form includes no reference to such incidents. (*Id.*) Third, Pritchard told the officer that on July 18 she observed Plaintiff attempting to stop a camper as the child ran past him. (*Id.* ¶ 26(d).) Pritchard said that she had to intervene, explain to Plaintiff that the campers have disabilities, and ask him to keep his dog away from the campers. (*Id.*) Plaintiff again asserts that this statement is false and is not supported by her documentation form. (*Id.*) Fourth, Pritchard said that camp staff saw Plaintiff on July 19 "approach[ ] some of the campers and call[ ] out to them by their names and that Plaintiff was asking unidentified camp staff about certain campers and their disabilities." (*Id.* ¶ 26(e).) This allegation, too, is false, Plaintiff asserts, noting that it was likewise not included in Pritchard's documentation form. (*Id.*) Fifth, Pritchard says that she confronted Plaintiff after he initiated conversations with camp staff, another statement Plaintiff insists is not true. (*Id.* ¶ 26(g).) Sixth, Plaintiff alleges that Pritchard did not in fact see him on July 20 taking pictures in the direction of the two unidentified girls. (*Id.* ¶ 26(h).)

Plaintiff has identified other "false and defamatory" statements, though he does not allege that these were provided to Officers Walsh or Atto. For example, Pritchard told Ruiz that on July

3

19 a drone had hovered above a shirtless male camper lying by the pool, implying that Plaintiff operated the drone. (*Id.* ¶ 26(f).) According to Plaintiff, there is no pool at Austin Park, and he does not own a drone. (*Id.*) This incident is also unmentioned in Pritchard's documentation form. (*Id.*)

Later that same day, July 20, Plaintiff went to the MGPD headquarters to speak with the ranking officer. *Glickman*, 2019 WL 1754091, at *2.[3] While he was waiting in the station lobby, Officers Atto and Walsh approached Plaintiff and arrested him for disorderly conduct. *Id.* Plaintiff alleges that the false statements provided by Ruiz and Pritchard contributed to this arrest. (Second Am. Compl. [38] ¶ 27.) Shortly after his arrest, Plaintiff was banned from Austin Park between the hours of 8:00 a.m. and 4:00 p.m. for about six weeks (until August 31, 2017). (*Id.* ¶¶ 27–28; Ex. A to Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss [46].) A criminal complaint was also filed against Plaintiff, and he has included it with his response brief. (*See* Misdemeanor Complaint, Ex. B to Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss [46].) The criminal complaint, which both Pritchard and Ruiz signed, identified the following as reason for charging him with disorderly conduct:

> Knowingly and intentionally entered Austin Park for over a week with a dog that was unleashed during the hours that a handicap camp was in session. While at the park, the defendant engaged in conversations with handicapped children with the dog present. The defendant was asked by camp staff not to speak with the children because of their conditions. The defendant refused to comply with their multiple requests for he and his dog to stay away from the children. The defendant's actions alarmed and disturbed the complainant.

(*Id.*) In March 2018, Plaintiff was convicted of disorderly conduct after a bench trial in the Circuit Court of Cook County, but the court overturned the conviction a few months later because the criminal complaint did not show that his conduct breached the peace. *Glickman*, 2019 WL

---

[3] When considering a Rule 12(b)(6) motion, the court is permitted to consider matters outside the pleadings without treating it as a motion for summary judgment if that "information [ ] is subject to proper judicial notice." *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). "Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts." *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016). The court takes judicial notice of Judge Shah's opinion in the suit against MGPD and the officers.

1754091, at *2. In addition, Plaintiff, who worked as a vendor for Chicago Public Schools ("CPS"), lost his contract with the school district, "thereby losing his livelihood." (Second Am. Compl. [38] ¶¶ 2, 26.)

A year later, Plaintiff initiated this suit against Defendants Pritchard, Ruiz, and MNASR, asserting claims under federal and Illinois law. In a separate suit, Plaintiff also asserted numerous claims against Morton Grove, the MGPD, and Officers Walsh and Atto; the only claims that survived a motion to dismiss in that case are a First Amendment retaliation claim and an abuse of process claim. (*See Glickman v. Village of Morton Grove et. al.*, No. 18 C 04931 [65].) Defendants Pritchard, Ruiz, and MNASR now seek dismissal of all claims asserted against them.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss, the court accepts the well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016). Plaintiff has asserted the following claims against Defendants Pritchard and Ruiz: defamation (Count I); false light (Count II); intentional infliction of emotional distress ("IIED") (Count III); negligent infliction of emotional distress ("NIED") (Count IV); federal constitutional claims concerning his occupational liberty interest, due process, First Amendment retaliation, unlawful arrest, and unreasonable seizure (Count V); and state-law claims for false arrest, false imprisonment, malicious prosecution, and abuse of process (Count VIII). Plaintiff also asserts that Defendant MNASR is liable for Pritchard's and Ruiz's state law torts under a *respondeat superior* theory (Count VI) and for negligent hiring and negligent training and supervision (Count VII). (*See* Second Am. Compl. [38] ¶¶ 29–58.) Defendants have moved to

5

dismiss all counts for failure to state a claim upon which relief can be granted. For the reasons discussed below, Defendant's motion [40] is granted in part and denied in part.

I.  **State Law Claims**

Defendants contend, first, that they are absolutely immune from Plaintiff's claims stated under Illinois law. All of these clams—except for the negligent hiring, training, and supervision claims—are based on Pritchard and Ruiz's calling 911 and discussing Plaintiff, in an allegedly untruthful way, with Officers Atto and Walsh, which led to his arrest and prosecution for disorderly conduct.

Defendants' argument for immunity rests on the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq.* Specifically, Defendants point to § 2-201, which provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused," and § 2-109, which states that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Plaintiff does not dispute that MNASR is a public entity[4] or that Ruiz and Pritchard were governmental employees within the meaning of the Local Governmental and Governmental Employees Tort Immunity Act. *See id.* § 1-206 (defining "local public entity" broadly to include "park district[s]," "all other local governmental bodies," and "any non-for-profit corporation organized for the purpose of conducting public business"); *id.* § 1-202 ("'Employee' includes a present or former officer, member of a board, commission or committee, agent, volunteer, servant or employee, whether or not compensated, but does not include an independent contractor.").

---

[4] MNASR describes itself as "an extension of" the Des Plaines Park District, Golf-Maine Park District, Morton Grove Park District, Niles Park District, Park Ridge Park District, Skokie Park District, and Village of Lincolnwood Parks and Recreation. *About Us*, Maine-Niles Association of Special Recreation, http://mnasr.org/about/ (last visited Feb. 10, 2020).

According to the Illinois Supreme Court's interpretation of § 2-201, a defendant is entitled to immunity only if "(1) the employee held either a position involving the determination of policy *or* a position involving the exercise of discretion and (2) the employee engaged in *both* the determination of policy *and* the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted." *Andrews v. Metro. Water Reclamation Dist. of Greater Chi.*, 2019 IL 124283, ¶ 27, — N.E.3d — (2019). "Policy determinations," the Court elaborated, "are defined as decisions requiring the public entity or employee to balance competing interests and make a judgment call as to what solutions will best service those interests. Such interests may include safety, convenience, and cost." *Id.* ¶ 28 (citations omitted). And discretionary actions are those "where the employee has exercised 'personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed.'" *Id.* (quoting *Monson v. City of Danville*, 2018 IL 122486, ¶ 30, 115 N.E.3d 81, 91 (2018)). Discretionary acts are distinguished from "ministerial acts," which are "perform[ed] based on a given set of facts, in a prescribed manner, in accordance with a mandate of legal authority, and without reference to the official's discretion as to the propriety of that act." *Malinski v. Grayslake Cmty. High Sch. Dist. 127*, 2014 Ill. App. (2d) 130685, ¶ 8, 16 N.E.3d 915, 918 (2d Dist. 2014). Whether an act is discretionary or ministerial must be determined on a case-by-case basis. *Andrews*, 2019 IL 124283, ¶ 28.

Illinois courts have determined that absolute immunity can apply broadly and in a variety of circumstances:

> A fire marshal's instruction to an individual to stand near a door during a fire drill was a policy decision because the marshal had to balance the various interests competing for the fire department's time and resources, including the interests of efficiency and safety, in planning and conducting the drill. Similarly, a shop teacher's decision to remove a table saw's safety shield was a policy determination because the teacher was charged with balancing various interests that competed for the class's time and resources, including the interests of efficiency and safety, and he made a judgment call as to how best to perform his teaching duties. Workers filling potholes were engaged in policy decisions because they allocated their time and resources among the various potholes to be repaired, and a principal's denial of a student's request to leave school early due to bad weather

7

was a policy decision because it involved balancing the student's interest with the school's interest in an orderly dismissal.

*Kevin's Towing, Inc. v. Thomas*, 351 Ill. App. 3d 540, 548, 814 N.E.2d 1003, 1010 (2d Dist. 2004) (citations omitted). Reviewing its precedent, the Illinois Supreme Court has also noted that a policy determination or exercise of discretion requires a "conscious decision." *Andrews*, 2019 IL 124283, ¶ 34.

In light of this teaching, the court agrees with Defendants that the facts as Plaintiff has alleged them show that Pritchard and Ruiz made a policy determination and exercised discretion when they contacted and provided information to the police. MNASR documentation forms—which Plaintiff included with his complaint—show that camp staff became increasingly concerned about Plaintiff's conduct in the park in the days leading up to his arrest. (*See* Ex. B to Second Am. Compl. [38]; Ex. C to Second Am. Compl. [38], at 1.) Plaintiff's complaint alleges that Pritchard had asked him to keep his puppy separate from the campers the day before his arrest. (Second Am. Compl. [38] ¶ 2.) And in the portion of Plaintiff's criminal trial transcript that he provided with his complaint, Pritchard testified that she "underst[ood] it's a public park, but [she] just asked that he keep his dog at least away." (Trial Tr., *People v. Glickman*, No. 17 MC2 1538 (Cir. Ct. of Cook Cty. Mar. 19, 2018), Ex. D to Second Am. Compl. [38], at 13:7–9.) Hence, the facts show that Pritchard and Ruiz made a judgment call about how best to handle what they perceived as Plaintiff's problematic conduct, and they considered competing interests like their campers' safety and Plaintiff's right to be in Austin Park. Moreover, that their responses to Plaintiff's conduct changed after interacting with him over several days shows that their actions on July 20 were discretionary and not ministerial—that is, they made judgments about how best to handle Plaintiff rather than just react in a particular prescribed manner. Because Pritchard and Ruiz made a policy determination and engaged in discretionary actions, they are entitled to absolute immunity under § 2-201 from Plaintiff's defamation, false light, IIED, NIED, false arrest,

8

false imprisonment, malicious prosecution, and abuse of process claims. Consequently, Defendant MNASR is also derivatively immune in under § 2-109.

Plaintiff's arguments to the contrary are unavailing. First, whether or not Pritchard and Ruiz lied to Officers Atto and Walsh is not relevant because § 2-201 "provides absolute immunity for both negligence *and willful and wanton conduct.*" *Andrews*, 2019 IL 124283, ¶ 26 (emphasis added) (citing *In re Chi. Flood Litig.*, 176 Ill. 2d 179, 195–96, 680 N.E.2d 265, 273 (1997)). Second, *Fittanto v. Klein*, 788 F. Supp. 1451 (N.D. Ill. 1992), does not support Plaintiff's argument. *Fittanto*'s discussion of absolute immunity concerned witness immunity and judicial immunity, not Illinois tort law immunity. *See id.* at 1456–57. Indeed, the plaintiff in that case brought claims only under 42 U.S.C. § 1983 and not state law. *Id.* at 1454.

MNASR is also immune from the negligent hiring claim. Courts have consistently held that public entities are immune under § 2-201 from such claims. *See, e.g., Doe v. Vill. of Arlington Heights*, 783 F.3d 911, 922 (7th Cir. 2015) (upholding dismissal of a claim for negligent hiring because village was immune under § 2-201); *Doe 20 v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957, 989 (C.D. Ill. 2010) ("The Court does not see how the actual decisions to hire or re-hire could be considered ministerial. Case law concludes that hiring and firing are discretionary decisions, requiring a balancing of many different competing considerations."); *Johnson v. Mers*, 279 Ill. App. 3d 372, 380, 664 N.E.2d 668, 675 (2d Dist. 1996) ("[Hiring] is inherently discretionary and is not performed on a given state of facts in a prescribed manner."). There is precedent for denying a public entity immunity because it violated a statutorily imposed condition, *see, e.g., Mueller v. Cmty. Consol. Sch. Dist. 54*, 287 Ill. App. 3d 337, 346, 678 N.E.2d 660, 666 (1st Dist. 1997), but Plaintiff has not argued that this exception applies here. In fact, Plaintiff has offered no basis for denying MNASR absolute immunity for the negligent hiring claim.

Plaintiff's negligent training and supervision claim is a different matter.[5] As one court in this district recently observed, whether a public employer's training or supervision was discretionary or ministerial can typically be resolved only at the summary judgment stage. *See Love v. City of Chi.*, 363 F. Supp. 3d 867, 871–72 (N.D. Ill. 2019); *see also id.* at 872 ("For § 2-201 immunity to apply, the City must establish that its actions or omissions amounted to both a policy determination and an exercise of discretion."). But this does not save the claim from dismissal; Plaintiff's complaint does not sufficiently state a negligent training and supervision claim. To recover under that theory, Plaintiff must have pleaded that (1) MNASR "had a duty to supervise the harming party," (2) MNASR "negligently supervised the harming party," and (3) "such negligence proximately caused [his] injuries." *Doe v. Coe*, 2019 IL 123521, ¶ 52, 135 N.E.3d 1, 15 (2019) (quoting *Doe v. Coe*, 2018 IL App (2d) 170435, ¶ 90, 103 N.E.3d 436, 456 (2d Dist. 2018)). Although Plaintiff need not have alleged that MNASR had prior notice of any particular unfitness on the part of Ruiz or Pritchard, Plaintiff's injury must still be one that is generally foreseeable. *Id.* ¶ 61. Plaintiff's allegations do not meet that test; he has not alleged how it is that MNASR's supervision or training of Ruiz and Pritchard fell short. Nor is it clear how MNASR could have foreseen that Plaintiff would lose a contract with CPS or be banned from Austin Park. Under the facts alleged in the complaint, Plaintiff's injuries appear far less foreseeable than those in *Doe v. Coe*, 2019 IL 123521, ¶ 62, 135 N.E.3d at 17, for example, where the Illinois Supreme Court held that the plaintiffs had adequately pleaded that a church negligently supervised a youth minister who sexual assaulted a child because "it is generally foreseeable that abuse could occur in programs providing adults with unsupervised access to children." Finally, in his response brief, Plaintiff asserts that, for purposes of this claim, it is Ruiz, not MNASR, who is the "employer." (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss [46] at 21.)

---

[5] In Illinois, negligent hiring is a distinct cause of action from negligent training and supervision. *See Doe v. Coe*, 2019 IL 123521, ¶ 55, 135 N.E.3d 1, 15 (2019) (citing *Vancura v. Katris*, 238 Ill. 2d 352, 375, 939 N.E.2d 328, 343 (2010)).

Plaintiff does not explain why that is the case or how it should affect the analysis, and so this reframing does not save the claim from dismissal.

Plaintiff's claims for defamation (Count I); false light (Count II); IIED (Count III); NIED (Count IV); false arrest, false imprisonment, malicious prosecution, and abuse of process (Count VIII); as well as negligent hiring, training, and supervision (Count VII) are dismissed. Moreover, Count VI, in which Plaintiff asserted a *respondeat superior* theory of liability against MNASR for Pritchard's and Ruiz's state-law torts, is also dismissed.

## II. Constitutional Claims

Plaintiff also asserts a number of constitutional claims under 42 U.S.C. § 1983: interference with his occupational liberty interest, denial of due process, First Amendment retaliation, and unlawful arrest and seizure. (*See* Second Am. Compl. [38] ¶¶ 52–55.) Defendants argue that Plaintiff has not adequately pleaded those claims and that, even if he had, dismissal is appropriate because they are entitled to qualified immunity.[6] Unstated in either parties' brief, however, is that § 1983 claims can be asserted against municipal entities like MNASR only if its policy or custom caused Plaintiff's injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Not only has Plaintiff failed to explain how any MNASR policy or custom relates to his damages, he has also failed to identify any problematic practices at all. Therefore, Plaintiff's constitutional claims are dismissed to the extent they are asserted against MNASR. The court will next consider whether he has adequately pleaded these claims against Pritchard and Ruiz.

---

[6] Plaintiff asserts, briefly, that neither Pritchard nor Ruiz are government officials and therefore cannot enjoy qualified immunity. (*See* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss [46] at 10.) Plaintiff does not explain how he can assert § 1983 claims against Pritchard and Ruiz if they are not government officials. Regardless, Defendants are correct that courts have treated individuals in similar positions as government officials. *See, e.g., Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 927–28 (7th Cir. 2011) (child services department case manager); *Boyd v. Owen*, 481 F.3d 520, 526–27 (7th Cir. 2007) (child welfare investigator); *Fittanto*, 788 F. Supp. at 1459 (social workers).

To state an occupational liberty interest claim, Plaintiff must allege that "(1) the defendant made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010). While Plaintiff alleges that Pritchard and Ruiz made stigmatizing comments about him to Officers Atto and Walsh, he does not allege that those comments were disclosed publicly. True, his arrest and the reasons for it were publicized via Morton Grove's police blotter (*see* Ex. C to Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss [46] at 3), but the Seventh Circuit has said that "[t]he public-disclosure element requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large," *Palka*, 623 F.3d at 454 (citing *Ratliff v. City of Milwaukee*, 795 F.2d 612, 627 (7th Cir. 1986)). Pritchard and Ruiz did not publicize the information—the MGPD did. Plaintiff also has not pleaded facts that satisfy the third element. "[T]he removal of one job or employer from the universe of all jobs," the Seventh Circuit has held, "does not affect occupational liberty." *Blackout Sealcoating, Inc. v. Peterson*, 733 F.3d 688, 690 (7th Cir. 2010). Plaintiff has alleged no facts showing an entitlement to a CPS contract; to treat the loss of that contract "as a deprivation of liberty or property would be to override the Supreme Court's conclusion that public employers need not give notice or hold hearings before ending at-will contracts." *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. 564 (1972); *Perry v. Sindermann*, 408 U.S. 593 (1972)). Plaintiff's occupational liberty claim is dismissed.

Plaintiff's due process claim fares no better. This claim concerns Pritchard and Ruiz's supplying MGPD officers with false information, which set off the course of events that led to his arrest for disorderly conduct. The court agrees with Defendants that this allegation states a malicious prosecution claim and not a due process claim. Importantly, there is no action under the Constitution for malicious prosecution. *See Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) (quoting *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013)) ("There is no such thing as a constitutional right not to be prosecuted without probable cause."); *Brown v. City of Chicago*,

No. 18 C 7064, 2019 WL 4694685, at *5 (N.D. Ill. Sept. 26, 2019) ("The Court of Appeals has for many years held that there is no claim under the Constitution for malicious prosecution."). Plaintiff's allegation is similar to one considered in *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010), in which the plaintiffs alleged that the defendants had made false allegations, deliberately fabricated statements, and obstructed justice, all of which led to one of the plaintiff's imprisonment and arrest. But the *Fox* court held that such allegations "consist[ ] of nothing more than a hybrid of [a] Fourth Amendment false arrest and state law malicious prosecution claim[ ], and, accordingly, the due process claim is barred." *Id.* Plaintiff cites only one case in response, but it is inapposite: in *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012), the court, affirming the district court's denial of the defendants' summary judgment motions, permitted the plaintiffs to pursue due process claims for evidence fabrication only because the false evidence was used to deprive them of their liberty. The Seventh Circuit has said that plaintiffs lack a due process claim for evidence fabrication if the only deprivation of their liberty came from their arrest. For instance, in *Alexander v. McKinney*, 692 F.3d 553, 554 (7th Cir. 2012), the plaintiff asserted a due process claim against a prosecutor and FBI agents who allegedly manufactured false evidence that was presented at trial against him. But the plaintiff, who had suffered no liberty deprivation because he had been released on bond after his arrest and acquitted at trial, was held to have only a false arrest claim and not a due process claim. *Id.* at 557–58. As the Court of Appeals held in another case, "[the plaintiff], released on bond following his arrest and acquitted at trial, falls squarely within our holding in *Alexander*, and, accordingly, cannot make out an evidence fabrication–based due process violation." *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015). Plaintiff in this case has alleged no deprivation of his liberty, and so he has not stated a due process claim for the allegedly false statements provided by Pritchard and Ruiz.

Next, the court considers whether Plaintiff has pleaded sufficient facts to support a finding that Pritchard and Ruiz retaliated against him in violation of the First Amendment.[7] To state a First Amendment retaliation claim, Plaintiff must have alleged that "(1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter his free speech; and (3) his protected speech was at least a motivating factor for the deprivation." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019). Plaintiff has not pleaded that he was engaged in any constitutionally protected speech. Although public parks are public forums where Plaintiff may, with few restrictions, exercise his First Amendment rights, *see DeBoer v. Vill. of Oak Park*, 267 F.3d 558, 565–68 (7th Cir. 2001), Plaintiff's mere presence in Austin Park is not speech. Conduct is entitled to First Amendment protection only if it is "inherently expressive"—that is, it "must comprehensively communicate its own message without additional speech." *Tagami v. City of Chi.*, 875 F.3d 375, 378 (7th Cir. 2017) (quoting *Rumsfeld v. Forum for Acad. & Inst'al Rights, Inc.*, 547 U.S. 47, 66 (2006)). "Put slightly differently, the conduct *itself* must convey a message that can be readily 'understood by those who view[ ] it.'" *Id.* (alteration in original) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). Plaintiff has not alleged that his being in the park had any communicative purpose, nor has he "offered any facts from which it might reasonably be inferred that onlookers would have readily understood" that his presence in the park with Ernie had some expressive content. *Id.* at 378. Even if his presence in the park were protected speech, it is far from clear that Plaintiff has adequately pleaded that such conduct—as opposed to his interactions with MNASR campers—was a motivating factor for any deprivation Pritchard and Ruiz may have caused him.

Finally, Plaintiff asserts a Fourth Amendment claim for unreasonable arrest or unreasonable seizure. To state such a claim, Plaintiff must allege that he was arrested or seized

---

[7] In Plaintiff's suit against Officers Atto and Walsh, the court did not dismiss the part of his First Amendment retaliation claim that concerned whether the officers had retaliated against him for saying he was going to file a complaint against them. *Glickman*, 2019 WL 1754091, at *10. That claim is not relevant to the one asserted against Defendants in this case.

without probable cause. *See Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016); *Bielanski v. Cty. of Kane*, 550 F.3d 632, 637 (7th Cir. 2008). Defendants insist that Judge Shah's ruling in Plaintiff's other suit bars this claim under the doctrine of collateral estoppel. (*See* Defs.' Mem. in Supp. of Mot. regarding Suppl. Authority [49] at 4–6.) Although Judge Shah determined that Officers Atto and Walsh had probable cause to arrest Plaintiff, *see Glickman*, 2019 WL 1754091, at *6–8, he reasoned that the officers' probable cause was based only on Pritchard's and Ruiz's allegedly false statements, *id.* at *8 n.9. That the officers had probable cause for Plaintiff's arrest does not necessarily mean that Pritchard and Ruiz had probable cause for their allegations against Plaintiff. *See id.* ("Police officers may rely on accusations from witnesses to establish probable cause, even if those accusations end up being false."). Thus, whether Defendants had probable cause to try to get Plaintiff arrested has not been actually litigated, nor was it necessary to the court's judgment, which are both required for collateral estoppel to apply. *See Munson v. Butler*, 776 Fed. App'x 339, 342 (7th Cir. 2019) (listing the requirements for collateral estoppel).[8] Similarly, Defendants contend that Plaintiff's initial conviction for disorderly conduct shows that his rights were not violated. While a conviction may preclude an assertion of an arrest without probable cause, *see, e.g., Currie v. Baldridge*, 914 F.2d 993, 996 (7th Cir. 1990), Plaintiff's conviction was overturned. He is therefore not estopped from asserting this claim. *See Woidtke v. St. Clair Cty.*, 335 F.3d 558, 566 (7th Cir. 2003) (noting that a plaintiff may pursue a cause of action asserting his innocence once the conviction is overturned).

Defendants also assert that they cannot have violated Plaintiff's Fourth Amendment rights because MGPD officers—not Defendants—performed the arrest. But the Seventh Circuit has rejected such a categorical position. In *Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006),

---

[8] Although Judge Shah's opinion does not preclude this claim, Plaintiff's other suit could indeed present an obstacle in this one. In his fourth amended complaint in that other case, Plaintiff alleges that Officers Atto and Walsh arrested him in order to retaliate against his attempt to file a police misconduct complaint against them. (*See Glickman v. Vill. of Morton Grove, et. al.*, No. 18 C 04931 [65] ¶ 28.) That allegation may be inconsistent with the assertion that Plaintiff was arrested because of Pritchard's and Ruiz's false statements.

15

the court stated that "[a] police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment, even if he did not conduct the arrest himself." Such reasoning has not been limited to police officers: the Court of Appeals has also noted that even a school principal could be liable for a Fourth Amendment claim for signing a criminal complaint "if he lacked probable cause to allege the criminal acts detailed in the complaint." *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 624 n.2 (7th Cir. 2010). Plaintiff has alleged that he was arrested and that Pritchard and Ruiz told lies in order to get him arrested. His complaint also specifically identifies which statements were the alleged lies, including that he had been acting suspiciously at the park for a week and a half, that he continually tried to initiate conversations with the campers, that he let Ernie run at the campers, that he tried to stop a camper who had run past him, that he called out campers by name and asked camp staff about their disabilities, and that he took pictures of the two juvenile females. *See Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992) (stating that a plaintiff must identify what statements are lies to adequately plead that a defendant lied); *Richardson v. Metro. Family Servs.*, No. 14 C 1711, 2014 WL 7205581, at *7 n.5 (N.D. Ill. Dec. 18, 2014) (noting that the plaintiff met the standard from *Lucien* because she "identifies the particular allegedly false statement"). And as already noted, both Pritchard and Ruiz signed the criminal complaint charging Plaintiff with disorderly conduct. (*See* Misdemeanor Complaint, Ex. B to Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss [46].) Defendants dispute Plaintiff's characterization of Pritchard's and Ruiz's statements as falsehoods, but whether they did in fact lie is a question of fact that cannot be resolved when considering a Rule 12(b)(6) motion.

That Plaintiff has sufficiently pleaded this claim does not end the matter; Defendants contend that dismissal is still proper because they are entitled to qualified immunity, which "shields a public official from suit for damages unless caselaw clearly puts him on notice that his action is unconstitutional." *Campbell v. Kallas*, 936 F.3d 536, 538 (7th Cir. 2019). That is, this Fourth Amendment claim still must be dismissed unless Plaintiff's "constitutional right was clearly

established at the time of the alleged violation." *Id.* at 545 (alteration in original) (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009)). "To be clearly established, at the time of the challenged conduct," the Seventh Circuit has said, "the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right . . . and existing precedent must have placed the statutory or constitutional question beyond debate." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (quoting *Humphries v. Milwaukee Cty.*, 702 F.3d 1003, 1006 (7th Cir. 2012)). In other words, "in the light of pre-existing law the unlawfulness must be apparent," but it is not necessary that "the very act in question has been previously held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (7th Cir. 1987). While there is no case from before July 2017 showing that camp counselors cannot tell lies about another person's conduct to protect the campers, the right to be free from arrest without probable cause is well established. *See, e.g., Driebel v. City of Milwaukee*, 298 F.3d 622, 652 (7th Cir. 2002). It is equally clear that the Fourth Amendment protects against arrests premised on lies. *See Acevedo*, 457 F.3d at 723; *McCullah v. Gadert*, 344 F.3d 655, 660–61 (7th Cir. 2003) (stating that the filing of an incident report with fabricated information could be basis for Fourth Amendment claim). As Plaintiff correctly observes, courts have also denied qualified immunity for defendants who allegedly made false statements even if they were intended to protect children. For example, in *Snell v. Tunnell*, 920 F.2d 673, 696–99 (10th Cir. 1990), the Tenth Circuit considered whether the defendant social workers were entitled to qualified immunity when they removed children from a home on the basis of child abuse allegations that they knew were false. It was clearly established law, the *Snell* court reasoned, that the social workers could not rely on such information. *Id.* at 699.[9] Likewise, Pritchard and Ruiz are not entitled to qualified

---

[9] The *Snell* plaintiffs had produced evidence showing that the defendants knew the allegations were false, *Snell*, 902 F.2d at 697–98, while Plaintiff has only pleaded that Pritchard's and Ruiz's statements were false. *Snell* was an appeal from an order granting summary judgment, however, *id.* at 676, meaning that the plaintiffs in that case had the opportunity to develop the record regarding the defendants' conduct.

immunity if they knowingly told lies to get Plaintiff arrested, as he has alleged. Defendant's reliance on *Fittanto*, 788 F. Supp. 1451, is misplaced. The plaintiffs in *Fittanto*, 788 F. Supp. at 1457, asserted § 1983 claims against the defendant social workers who had allegedly encouraged a child to fabricate abuse accusations against one of the plaintiffs, resulting in another child's being removed from their home. The court held that those defendants were entitled to qualified immunity because, unlike in *Snell*, the plaintiffs had not alleged that the defendants had known that the allegations were false. *Id.* at 1458–59. In contrast, Plaintiff has properly alleged that Pritchard and Ruiz lied to the MGPD officers about his conduct, which violated his right to be free from false arrest—a clearly established right. Under the facts as Plaintiff has alleged them, Pritchard and Ruiz are not entitled to qualified immunity for the Fourth Amendment claim.

## CONCLUSION

Defendants' motion to dismiss [40] is granted in part and denied in part. All claims asserted against Maine-Niles Association of Special Recreation are dismissed. Plaintiff may pursue his Fourth Amendment claim against Pritchard and Ruiz, but all other claims asserted against them are dismissed.

ENTER:

Dated: February 24, 2020

_____
REBECCA R. PALLMEYER
United States District Judge